UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CURTIS L. LAYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:07-CV-380 |
| | ) | (VARLAN/SHIRLEY) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 10 and 11] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 14 and 15]. Plaintiff Curtis Layman seeks judicial review of the decision of the Administrative Law Judge, the final decision of Defendant Commissioner.

On August 29, 2002, Plaintiff filed an application for disability insurance benefits (Tr. 59-66) and supplemental security income payments (Tr. 327-33). After his application was denied initially and upon reconsideration, Plaintiff requested a hearing (Tr. 57-58). On May 7, 2004, a hearing was held before an ALJ to review determination of Plaintiff's claim (Tr. 434-57). At the hearing, the ALJ heard testimony from Plaintiff, Buddy Gann, a friend and former co-worker of Plaintiff, and Robin Guinn, also a friend former co-worker. A supplemental hearing was held on December 8,

2004 (Tr. 458-66). Plaintiff testified again along with JoAnn Bullard, a vocational expert ("VE"). On June 27, 2005, the ALJ found that Plaintiff was not disabled because he did not have an impairment or combination of impairments that was "severe" (Tr. 22). The Appeals Council denied Plaintiff's request for review; thus the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

I.      **ALJ Findings**

The ALJ made the following findings:

> 1. The claimant has not performed Substantial Gainful Activity at anytime material hereto.
>
> 2. The claimant does not have an impairment or impairments that meets or equals the <u>Listing</u> requirements.
>
> 3. The claimant has no severe impairment and therefore is not disabled.

(Tr. 22-32).

II.     **Disability Eligibility**

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. <u>See</u> 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

2

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent his from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.150). Plaintiffs bear the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

**III.    Standard of Review**

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).

**IV.    Arguments**

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's disability determination. Plaintiff contends the ALJ erred in: (A) failing to find one of his physical and/or mental impairments "severe"; and (B) failing to properly evaluate the medical evidence of record [Doc. 11]. Specifically, Plaintiff argues the ALJ did not give the proper deference to his treating physician's opinion and failed to properly weigh and evaluate the opinions of the state agency medical consultants and psychiatrist, and consulting psychologists. The Commissioner, in response, contends substantial evidence supports the ALJ's finding of non-disability and any arguments to the

contrary must fail [Doc. 15]. Plaintiff bears the burden of proving his entitlement to benefits. Boyers v. Sec. of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

*A.     Failure to Find Plaintiff Suffered From a Severe Impairment*

Plaintiff was forty-seven years of age at the time of the administrative hearing and testified he had an eight-grade education (Tr. 437). He alleges disability based upon severe back pain, radiculopathy, pain in elbows, knees, ankles, spondylosis, depression syndrome, and high blood pressure (Tr. 23). The ALJ found Plaintiff did not suffer from a severe impairment, and therefore, is not disabled (Tr. 22).

The burden of establishing the presence of a severe impairment is a *de minimis* hurdle. See Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." Id. Nevertheless, a claim may be dismissed at step two if it is determined that the claim is "totally groundless" solely from a medical standpoint. Id. at 863 (quoting Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 89 n.1 (6th Cir. 1985)). To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was "disabled" as defined by the Act, or on prior to the date that the applicant was last insured. See id. The Social Security regulations interpret 42 U.S.C. § 1382c(a)(3)(A) to require the existence of a "severe" impairment - that is, "any impairment or combination of impairments which significantly limits [the claimant's] ability to do

5

basic work activities." 20 C.F.R. § 404.1520(c).[1]

Here, the ALJ concluded that Plaintiff did not suffer from a "severe" impairment as defined in 20 C.F.R. §404.1520(c). After considering the medical evidence in the record and Plaintiff's testimony, the ALJ acknowledged Plaintiff suffered from various impairments, including minimal degenerative disc disease, high cholesterol, and a bone density showing osteopenia and a high risk for fracture (Tr. 30-32). The ALJ concluded, however, that Plaintiff's medical records failed to establish that Plaintiff suffered from any "physical or mental impairment" which would significantly limit his ability to perform basic activities (Tr. 32). The ALJ noted that the medical records showed that while Plaintiff presented with "unbearable back pain", elbow, knee, ankle, and hand pain, his X-rays revealed only "mild DDD [degenerative disk disease]" (Tr. 206) and that "[s]ubsequent X-rays for all body parts, expect spine, for which claimant complained [of pain] were negative" (Tr. 24) Additionally, the ALJ noted Plaintiff's MRI of his brain conducted on March 27, 2003 was "within normal limits" (Id.). The Court finds the record indicates that the ALJ's determination that Plaintiff did not suffer from a severe impairment is supported by substantial evidence.

On May 5, 2003, Plaintiff under went X-rays of his cervical spine, knees, hands, feet, lumbar spine, shoulders, and sacroiliac joints (Tr. 262-68). Essentially, all findings were normal and with "unremarkable" impressions (id.), but for the X-ray of his lumbar spine which revealed "minimal osteophytic change" (Tr. 266). Furthermore, Dr. Boyer observed "very minimal degenerative

---

[1]Basic work activities are defined in the Social Security regulations as "the abilities and aptitudes necessary to do most jobs. Examples of these include (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Responding appropriately to supervision, co-workers and usual work situations; and (5) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b).

change on [Plaintiff's] lumbar scan and nothing ... explains the pain that he is describing" (Tr. 238). The Court finds the objective medical evidence of record provided substantial evidence for the ALJ's determination that Plaintiff did not suffer from a severe impairment. See Crady v. Sec'y of Health & Human Servs., 835 F.2d 617, 620-21 (6th Cir. 1987) (per curiam) (no severe knee impairment where, among other factors, no evidence of restricted motion and only "minor" degeneration established by x-ray); Villarreal v. Sec'y of Health & Human Servs., 818 F.2d 461, 464 (6th Cir. 1987) (per curiam) (no severe back or leg impairment where pain severity not recorded, motion restriction unquantified, and x-rays revealed "mild" abnormalities).

Plaintiff further argues the ALJ erred in failing to credit his treating physician, Dr. Johnson's diagnosis of fibromyalgia as a severe impairment. Plaintiff contends the ALJ did not give proper deference to Dr. Johnson's opinion, especially in light of Dr. Johnson referring him to a neurosurgeon, rheumatologist, and pain specialist in order to diagnose his fibromyalgia. Plaintiff is correct in his assertion that fibromyalgia "can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." Rogers v. Comm. of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007). However, the Sixth Circuit has also held that a diagnosis of fibromyalgia does not automatically entitle a plaintiff to disability benefits. Vance v. Comm of Soc. Sec., 2008 WL 162942, at * 4 (6th Cir. Jan. 15, 2008).

In Preston v. Sec'y of Health & Human Servs., 854 F.2d 815, 817-19 (6th Cir. 1988), the Sixth Circuit stated that the process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. Preston, 854 F.2d at 820 (emphasis added). The Court further noted in

7

that the claimant's treating physician in Preston:

> ha[d] done all that can be medically done to diagnose [her] fibrositis and to support his opinion of disability. He referred [claimant] to a neurologist, orthopedist, rheumatologist, and a psychologist for evaluation. He also referred [claimant] to physical therapy and a pain clinic for treatment. He observed that [claimant's] complaints of pain, stiffness, and fatigue were classic symptoms of fibrositis. Moreover, even before [claimant's treating physician] was able to pinpoint fibrositis as the proper diagnosis, he was injecting cortisone or novocaine for relief into the parts of the body that he later learned were "focal tender points" characteristic of fibrositis patients.

Id.

In this case, Plaintiff contends he suffers from fibromyalgia. While there is evidence that his treating physician, Dr. Johnson, referred to him to other specialists for evaluation, none of these doctors confirmed Dr. Johnson's diagnosis, instead identifying Plaintiff suffered from pain or noting "he has a diagnosis of fibromyalgia" (Tr. 277). Furthermore, the ALJ noted in his decision that the evidence showed Plaintiff did not complain of joint pain until June 2002 and that his "pain scale was at a maximum before he extended his complaints from back to multiple joints" (Tr. 29). Finally, there is no indication that Dr. Johnson ever took steps to systematically eliminate other diagnoses, identify painful trigger points, or identify other pain-producing symptoms of fibromyalgia (Id.).

Thus, the ALJ properly concluded that the objective medical evidence of record does not support Plaintiff's assertions as to the severity of his physical impairments, specifically pain caused by fibromyalgia. Although there are no objective medical tests that can conclusively confirm the diagnosis of fibromyalgia, the ALJ could properly find that the actions taken by Dr. Johnson fell far short of the action taken by the treating physician of the claimant in Preston who systematically eliminated diagnoses other than fibrositis. Accordingly, the ALJ's findings are supported by

substantial evidence.

## B. *Evaluation of Medical Evidence of Record*

In regard to the ALJ's treatment of the medical evidence of record, Plaintiff contends the ALJ erred in rejecting the opinion of his treating physician, Dr. Johnson; ignored the opinions of state agency psychiatrist, Dr. Bradley,[2] and state agency consulting physician, Dr. Tilley; and improperly evaluated the opinions of the consulting psychologists, Dr. Adlin and Dr. Wilson. In rejecting the opinions of the above-listed doctors, the ALJ adopted the medical opinion of Dr. Boyer, a neurosurgeon who treated Plaintiff at the request of Dr. Johnson.

### 1. **Treating Physician**

Generally, the "medical opinion of the treating physician is to be given substantial deference, and if that opinion is not contradicted, complete deference must be given." Walker v. Sec'y of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir. 1992). The reason for such a rule is clear: the treating physician has had a greater opportunity to examine and observe the patient. Id. Treating physician opinions, however, receive controlling weight only when they are well-supported by medically acceptable clinical techniques and are consistent with other substantial evidence. See 20 C.F.R. § 404.1527(d)(2); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The ALJ "will always give good reasons in [the] notice of determination or decision for the weight ... give[n] [to the] treating source's opinion." Id. However, "the ultimate decision of disability rests with the ALJ." Lancaster v. Comm'r of Soc. Sec., 228 Fed. Appx. 563, 576 (6th Cir. Apr. 26, 2007).

In regard to Dr. Johnson's diagnosis, the ALJ found his "opinions concerning the nature and

---

[2]As noted by the ALJ in his opinion, Dr. Bradley's last name is illegible (Tr. 31). Accordingly, this Court will refer to Dr. Bradley by his first name in order to analyze his opinion.

9

severity of the claimant's impairments are not entitled to controlling weight" (Tr. 28). He further found Dr. Johnson's pronouncement of Plaintiff disabled unsupported since Dr. Johnson only saw Plaintiff four times in 2002; there were "no medical signs or laboratory findings" supporting the claim; and there was "a plethora of evidence establishing no identifiable impairment" (Tr. 30).

In this case, the Court finds the ALJ described with specificity his reasons for rejecting Dr. Johnson's opinion. As discussed above, the ALJ explained he rejected Dr. Johnson's fibromyalgia diagnosis in light of the fact that Dr. Johnson did not perform a trigger point test in making his diagnosis (Tr. 29). In regard to Plaintiff's other alleged ailments diagnosed by Dr. Johnson, the ALJ outlined and highlighted the objective medical evidence of record which did not support Dr. Johnson's diagnosis (Tr. 23-32). The ALJ pointed to the completed x-rays, all of which showed negative or mild results (Tr. 23-25). In considering Dr. Johnson's diagnosis of "Possible Rheumatological Disorder, (Rheumatoid Arthritis) Lupus", the ALJ stated "[p]rior to August 12, 2002, Rheumatoid factor screen was negative and Antinuclear Antibody test negative. SED rate slightly positive. Subsequently both tests again negative and SED rate within normal limits" (Tr. 28). Dr. Johnson also diagnosed Plaintiff with depression, which the ALJ reasonably discredited in light of Dr. Johnson's inconsistent treatment notes, finding "only minimal complaints of depression" and that Dr. Johnson, using a form in filling out his treatment notes, occasionally did not fill out the Neuro-Psych check list, and when he did fill it out "mood and affect were checked normal" (Tr. 29).

Accordingly, the record shows the ALJ properly reviewed all of the objective evidence of record in conjunction with his review of Dr. Johnson's treatment notes and medical determinations in evaluating Dr. Johnson's medical opinion. The Court finds that the ALJ reasonably did not credit

Dr. Johnson's medical opinion and discounted it in light of the other objective medical evidence of record. See Cutlip v. Sec'y of Health & Human Serv., 25 F.3d 284, 287 (6th Cir. 1994) (physician opinions must be adequately supported by medical findings and consistent with evidence overall). Accordingly, the ALJ's determination not to credit Dr. Johnson's opinion and diagnosis is supported by substantial evidence, thus the ALJ has not committed error.

### 2. State Agency Physicians and Consulting Psychologists

"State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act. ... [b]ecause [they] are experts, ... the rules in 20 C.F.R. 404.1527(f) and 416.927(f) require administrative law judges ... to consider their findings of fact about the nature and severity of an individual's impairment(s)." Social Security Ruling 96-6p. ALJs "are not bound by the findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." Id.

Dr. Bradley completed a Mental Residual Functional Capacity Assessment Form (Tr. 309-26). Dr. Bradley found Plaintiff was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and interact appropriately with the general public (Tr. 309-10). He further found Plaintiff mildly limited in his restriction of activities of daily living, moderately limited in maintaining social functioning, moderately limited in maintaining concentration, persistence, and pace (Tr. 323). Additionally, in the section for consultant's notes, Dr. Bradley

11

noted, what appears to the Court to read "severe but SOL" (Tr. 325). It is unclear to the Court if this is in fact the proper designation, and if so, what this designation means. Plaintiff contends Dr. Bradley "specifically stated that [his] mental condition was 'severe'" [Doc. 11 at 13]. Even if that is the case, the Court finds the "severe" designation inconsistent with Dr. Bradley's overall assessment which found moderate and mild limitations in his mental capabilities. Furthermore, as required by the regulations, the ALJ explained the weight he gave to Dr. Bradley's opinion, very little, and why (Tr. 32). The ALJ explained that "the basis for [Dr. Bradley's] diagnosis is not well explained. ... it appears based on juxtaposition of reports that he relied on from Dr. Adlin, his opinions are not totally consistent with Dr. Adlin's" (Tr. 31-32). Furthermore, the ALJ found Dr. Bradley's opinions "are based on a minimal portion of the record and are of no probative value" (Id.). Accordingly, this Court finds the ALJ's decision not to adopt the opinion of Dr. Bradley is well-explained and supported by substantial evidence.

Dr. Tilley completed a Physical Residual Functional Capacity Assessment, finding Plaintiff could do no more than light work (Tr. 296-301). Dr. Tilley found Plaintiff could: occasionally lift/carry twenty pounds; frequently lift/carry ten pounds; stand/walk about six hours in an eight hour workday; sit about six hours in an eight hour workday; and is unlimited in his ability to push/pull (Tr. 297). Dr. Tilley also opined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl; suffered no manipulative, visual, communicative, or environmental limitations (Tr. 298-300). The ALJ rejected Dr. Tilley's assessment, finding it had "no correlation with the record" (Tr. 31). The ALJ found Dr. Tilly based his assessment on Plaintiff's own report of his MRI results, whereas he accepted the MRI assessment of Dr. Boyer (Id.). Accordingly, this Court finds the ALJ, as required, explained his reasons for rejecting Dr. Tilley's assessment, that is, he instead

gave greater weight to Dr. Boyer's assessment of Plaintiff's MRI. Thus, the ALJ has not committed error.

Dr. Adlin, a consultative psychologist, evaluated Plaintiff on September 24, 2003 (Tr. 302-06). Dr. Adlin found Plaintiff's "depression is secondary to his medical condition ... [but that] his depression does not interfere with his ability to sustain concentration and persistence" (Tr. 306). Dr. Adlin further stated that Plaintiff is "able to independently initiate activities, but reports that he cannot sustain activity due to pain" (Id.). Dr. Wilson, also a consultative psychologist, evaluated Plaintiff on June 30, 2004 (Tr. 377-88). Dr. Wilson first opined that "[t]wo of the three validity scales suggest that Mr. Layman may be exaggerating the presence or severity of his symptoms in order to appear more psychologically distressed than is actually the case " (Tr. 382). Additionally, Dr. Wilson stated Plaintiff's reports, in addition to observations made during the evaluation, "suggest that [Plaintiff] currently experiences symptoms of a major depressive disorder, single episode, moderate" (Id.). Moreover, Dr. Wilson stated it was his opinion that Plaintiff's "psychological limitations are mild to moderate, and that his physical limitations appear to be those that are most likely to affect his work performance. ... it seems likely that Mr. Layman would be able to adapt psychologically to some work environments, particularly those that would allow him to work at a slower pace and take breaks as he felt the need in order to accommodate his symptoms." (Tr. 383).

The ALJ acknowledged these two evaluations were part of the overall record (Tr. 31). In regard to Dr. Adlin's report, the ALJ stated that Dr. Adlin "made several diagnoses including rule out malingering" and "specifically noted [that Plaintiff's] depression is secondary to his medical condition" (Id.). The ALJ found Dr. Adlin's limitations "were intertwined with [Plaintiff's] physical

13

problems" (Id.). In regard to Dr. Wilson's report, the ALJ also noted that it ruled out malingering and suggested that Plaintiff might be "exaggerating the presence or severity of his symptoms" (Id.). The ALJ also pointed to "[o]bjective evidence of exaggeration [which] was noted on MMPI-II testing" (Id.). Furthermore, the ALJ highlighted that Plaintiff "denied anxiety or depression on March 12, 2004", after Dr. Adlin and Dr. Wilson made their determinations (Id.). And, as discussed above, Dr. Johnson, Plaintiff's treating physician, in his notes, identified "few complaints for depression" and that Dr. Johnson's records and the record overall, support a conclusion of "either no mental impairment or that the mental impairment is well controlled with medication" (Id.). Accordingly, this Court finds the ALJ adequately discussed the opinions of the consultative psychologists in his opinion and gave specific reasons for not crediting the diagnosis that Plaintiff suffered from a severe mental impairment. Thus, his determination is supported by substantial evidence.

### C. Sedentary Work

The Commissioner further argues, in the alternative, that if this Court finds substantial evidence does not support the ALJ's determination that Plaintiff does not suffer a severe impairment, that remand is not necessary since the record evidence supports the determination that Plaintiff could perform sedentary work.

An ALJ's RFC determination should focus on what a claimant "can and cannot do" and not what she "does and does not suffer from." Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 239 (6th Cir. 2002). On the other hand, the hypothetical posed to a VE by an ALJ "should be a more complete assessment of [Plaintiff's] physical and mental state and should indicate an 'accurate [] portray[al] [of his] individual physical and mental impairment[s]." Id. (quoting Varley v. Sec'y of

Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987)). If vocational expert testimony is used to meet the burden placed on the Commissioner of proving the existence of a substantial number of jobs that the claimant can perform, the testimony must be given in response to a hypothetical question that accurately described the claimant in all significant aspects. Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994). To constitute substantial evidence, a response to a hypothetical question requires that each element of the hypothetical accurately describe the claimant. Id.

At Plaintiff's hearing, the ALJ hypothesized a worker of Plaintiff's age, education, work background, and size (Tr. 460-61). The hypothetical claimant would be restricted to sedentary work and "from a psychological standpoint, ... would have satisfactory ability in all areas except dealing with work stresses" (Tr. 461). The VE stated, with those limitations, there would be no jobs the hypothetical claimant could perform because he would not be capable of dealing with work stresses (Id.). The ALJ then proposed a second hypothetical in which the claimant could deal with work stresses on a "satisfactory ability", to which the ALJ responded that the claimant could perform the job of table worker/fabrication, hand bander, addresser, surveillance system operator/monitor at sedentary exertion (Id.).

The Court agrees with the Commissioner's argument and finds the hypothetical proposed to the VE provides substantial evidence that Plaintiff is capable of performing sedentary work since he included all of Plaintiff's credible limitations. Although this Court found that the ALJ did not err in failing to find any of Plaintiff's impairments as severe, the record also shows Plaintiff is not disabled since he is capable of sedentary work.

## V. Conclusion

Accordingly, the Court finds that the ALJ properly reviewed and weighed all of the medical source opinions to determine that Plaintiff does not suffer from a severe impairment and therefore, is not disabled. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[3] that Plaintiff's Motion For Judgment on the Pleading [Doc. 10] be **DENIED** and that the Commissioner's Motion for Summary Judgment [Doc. 14] be **GRANTED**.

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.   
United States Magistrate Judge

---

[3]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).